[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 12, 2011
JOHN LEY
CLERK

_____

No. 10-10734

_____

D.C. Docket No. 1:08-cv-01576-TCB

GERALDINE RUTLAND,

Plaintiff-Appellant-Counter-Defendant,

versus

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Defendant-Appellee-Counter-Claimant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 12, 2011)

Before DUBINA, Chief Judge, EDMONDSON and WILSON, Circuit Judges.

PER CURIAM:

Geraldine Rutland appeals the district court's grant of summary judgment in

favor of State Farm Mutual Automobile Insurance Company ("State Farm") on her breach-of-contract claim. The main question is whether State Farm was required to cover a car accident that occurred during a lapse in Rutland's insurance coverage; that lapse resulted from her failure to pay the required premiums. After careful consideration of the briefs and review of the record on appeal, and having heard oral argument in the matter, we conclude that Rutland has failed to create a genuine issue of material fact. Thus, we affirm the district court's order granting summary judgment.

## I. BACKGROUND

As of June 2003, Rutland had an active automobile insurance policy with State Farm. On June 27, 2003, State Farm attempted to debit $286.51 from Rutland's checking account per their prior arrangement for payment of premiums. On June 30, 2003, Rutland's bank informed State Farm that they would not honor the debit because Rutland's account was overdrawn.

State Farm sent a certified letter to Rutland on July 7, 2003, bringing to her attention the unpaid premium. The letter informed Rutland that if the premium was not paid by July 20, 2003, her automobile coverage would be canceled. Not having received her payment by the specified date, State Farm canceled Rutland's insurance policy.

On July 31, 2003, Rutland was driving while intoxicated and crashed into another car, seriously injuring an adult and two minor children. Rutland attempted to report the car accident to her State Farm agent, John Davis, on August 1, 2003. Shirley Davis, an employee in Mr. Davis's office, informed Rutland that her insurance coverage had been terminated on July 20, 2003, due to non-payment of premiums. According to Rutland, Ms. Davis told her that if she paid the past-due amount of $286.51, her insurance coverage would be reinstated and State Farm would provide retroactive coverage for the crash. Ms. Davis has denied making any representation to Rutland that she would receive retroactive coverage, and Mr. Davis has since stated that no employee in his office would ever make an offer of retroactive coverage.

Rutland mailed a check for $286.51 to State Farm on August 4, 2003, and her insurance coverage was reinstated on August 5, 2003. Rutland claims that she spoke with Ms. Davis once again after paying the past-due amount and that Ms. Davis assured her that she would receive retroactive coverage for the car accident. State Farm sent Rutland a letter on August 28, 2003, to inform her that it would not provide retroactive coverage for her crash. The letter asked Rutland to provide State Farm with any further information that they should consider in regard to the denial of insurance coverage. State Farm then updated Rutland's billing statement

3

in September 2003 to reflect that her late payment was credited toward her account.

The victims of the car accident filed three civil actions against Rutland on May 25, 2005. State Farm did not defend Rutland, and she was unable to hire an attorney. The state court entered a default judgment against Rutland in the amount of $15,750,000. Rutland filed suit against State Farm on March 26, 2008, alleging that State Farm acted in bad faith by failing to defend her in the civil actions. State Farm moved for summary judgment and to exclude the affidavit of Jeniffer Ebert.[1] Rutland moved for partial summary judgment and to exclude the testimony of Frank Edward Jenkins III.[2] The district court granted State Farm's motion to exclude and motion for summary judgment. The district court also denied Rutland's motion for summary judgment and motion to exclude as moot.

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*, viewing the record and drawing all inferences in favor of the non-moving party. *Martin v.*

---

[1] Rutland attempted to introduce the affidavit of Ms. Ebert as proof that State Farm in the past had provided retroactive coverage for events that occurred while the insured's policy was canceled for non-payment of premiums.

[2] State Farm offered the testimony of Mr. Jenkins with regard to the issue of whether Rutland took the proper steps to notify State Farm of the May 25, 2005 lawsuits filed by the victims of Rutland's car accident.

*Brevard County Pub. Sch.*, 543 F.3d 1261, 1265 (11th Cir. 2008) (per curiam) (citations omitted). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "A party moving for summary judgment has the burden of showing that there is no genuine issue of fact." *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990) (quotation omitted).

### III.  DISCUSSION

Because Rutland failed to pay her premium on June 27, 2003, she was not covered by a written insurance policy on July 31, 2003, the date of her crash. State Farm sent a certified letter to Rutland informing her of the problem of non-payment and providing her with sufficient notice that the policy would be cancelled if the premium was not paid by July 20, 2003. Upon Rutland's failure to pay her premium on time, State Farm followed the proper procedure under Georgia law for cancellation of an insurance policy. *See* O.C.G.A. § 33-24-44(d) (ten-day notice is sufficient when a policy is cancelled for non-payment of premiums). State Farm had no duty to defend Rutland in any civil action arising from the July 31 car accident "since this was subsequent to the date coverage was cancelled due to nonpayment of premium." *Buffington v. State Auto. Mut. Ins.*

5

*Co.*, 384 S.E.2d 873, 874 (Ga. Ct. App. 1989).

Rutland, however, contends that despite the lack of a written insurance policy, State Farm had a duty to defend her in the 2005 lawsuit. First, Rutland argues that State Farm's August 5 acceptance of her late premium payment, combined with what Rutland views as an untimely and improper refund of the late payment, created a material issue as to whether State Farm waived its defense of lack of payment. Second, Rutland argues that Ms. Davis issued an oral binder for retroactive coverage when she advised Rutland to send in her past-due premium payment. Third, Rutland argues that there is a genuine issue of material fact concerning promissory estoppel. Finally, she argues that the district court abused its discretion by excluding an affidavit from Jennifer Ebert.

A.      *State Farm Did Not Waive Cancellation of Rutland's Policy by Accepting a Late Premium Payment on August 5, 2003*

Rutland relies on *Clark v. United Ins. Co. of Am.*, 404 S.E.2d 149, 152 (Ga. Ct. App. 1991), for the proposition that a genuine issue was raised as to whether State Farm's non-payment defense was waived upon its acceptance of Rutland's late premium payment. There, the court stated that "[i]f an insurance company receives, accepts, and retains past-due premiums which are paid subsequent to the due date and expiration of the grace period, it renews the contract and waives the

6

forfeiture for non-payments provided the acceptance is unconditional and the facts are known." *Id.* at 152. Although similar, the facts here are distinguishable from *Clark*.

In *Clark*, the insurance company never refunded the claimant's late payments. *Id.* at 153. Here, on the other hand, State Farm sent Rutland a letter on August 28 informing her they would not cover her crash and refunded the late payment in her September 2003 billing statement. State Farm offered the refund over four years before Rutland filed suit against State Farm. Rutland stresses the fact that State Farm held onto her late payment for "at least six weeks." However, six weeks was not unreasonably long because State Farm needed first to determine that Rutland's payment was improperly tendered. State Farm did not "retain" a past-due premium as was the case in *Clark*; thus, we conclude that State Farm did not waive its defense of non-payment.

*Clark* is also distinguishable from the facts of this case; there, the insurance company often accepted late premium payments after the passing of the grace period. *Id.* Rutland has not provided any evidence that State Farm had engaged in a regular practice of receiving late payments from her.

Rutland also finds issue with the way in which State Farm calculated the refund and the time it took State Farm to issue her refund. Neither of these

arguments raises a genuine issue of material fact: First, if Rutland believes that State Farm did not provide a complete refund for the period in which her coverage was canceled, she can file a separate lawsuit to collect this amount. This Court will not, however, find that State Farm "retained" a past-due premium on the basis of Rutland's speculation that State Farm may have incorrectly calculated the refund. Rutland has offered nothing more than conjecture that State Farm's calculations of the refund may have been in error; such unsupported and speculative contentions fall short of creating a genuine issue of material fact. Second, Rutland cites O.C.G.A. § 33-24-44(c)(1) in support of her assertion that State Farm's refund was late. However, this subsection of the statute sets forth the appropriate procedures for refunding paid premiums once a policy is canceled in its entirety, not refunds from past-due payments. Thus, Rutland's argument based on § 33-24-44(c)(1) has no merit.

B.    *Ms. Davis's Representations to Rutland Did Not Create an Oral Binder Between Rutland and State Farm*

State Farm, Ms. Davis, and Mr. Davis all dispute Rutland's claim that Ms. Davis told Rutland that State Farm would provide retroactive coverage for her crash. However, at the summary judgment stage we must construe all facts in favor of the nonmovant, Rutland; thus, we will proceed under the assumption that

8

Ms. Davis twice represented to Rutland that State Farm would provide retroactive coverage.

"The principal shall be bound by all the acts of his agent within the scope of his authority . . . ." O.C.G.A. § 10-6-51. "The principal is also bound when the agent lacks express authority but is possessed of apparent authority." *Home Materials, Inc. v. Auto Owners Ins. Co.*, 300 S.E.2d 139, 141 (Ga. 1983). For the following reasons, we conclude that Ms. Davis did not have the actual or apparent authority to bind State Farm to retroactive coverage of Rutland's crash.

State Farm does not give its agents the express authority to offer retroactive coverage: Ms. Davis and Mr. Davis both testified that they understood State Farm's policy to be that an agent does not have the authority to offer retroactive coverage. Furthermore, the merger clause in Rutland's original insurance policy stated that "this policy contains all of the agreements between you and us or any of our agents," and that policy did not contain any provisions allowing for retroactive coverage.

"'Apparent authority' is not predicated on whatever a third party chooses to think an agent has the right to do, or even upon what the agent says he can do, but must be based on acts of the principal which have led the third party to believe reasonably the agent had such authority." *Thompson v. Gen. Motors Acceptance*

9

*Corp.*, 389 S.E.2d 20, 21–22 (Ga. Ct. App. 1989) (quotation marks omitted). A reasonable person speaking with an employee of an insurance company should not believe that the employee has the authority to provide retroactive coverage, because the mere idea of retroactive insurance coverage defies common sense. An insurance policy is a "contract which is an integral part of a plan for distributing individual losses whereby one undertakes to indemnify another or to pay a specified amount or benefits upon determinable contingencies." O.C.G.A. § 33-1-2(2). Coverage for an event that has already occurred contravenes the very definition of insurance.

Finally, the fact that Rutland sent in a late payment after Ms. Davis allegedly told her that State Farm would provide retroactive coverage carries no significance. The late payment does not necessarily demonstrate that Rutland believed Ms. Davis had the authority to provide retroactive coverage; and even if Rutland did sincerely believe so, such a belief cannot be said to be reasonable.

C.     *Rutland Has Not Established a Genuine Issue of Material Fact Concerning Promissory Estoppel*

"A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by

enforcement of the promise." O.C.G.A. § 13-3-44(a). Rutland argues that, because of Ms. Davis's representations that State Farm would provide retroactive coverage, she renewed her policy with State Farm rather than entering into a new insurance contract with another company at a lower rate.

Rutland's promissory-estoppel argument misses the mark. The representations made by Ms. Davis occurred after Rutland's car accident and after Rutland's policy had been canceled for non-payment. Even assuming *arguendo* that Ms. Davis's representations resulted in higher premiums for Rutland, this has nothing to do with State Farm's refusal to cover Rutland's crash. If Rutland wishes to file suit against State Farm for the difference in insurance premiums, she is free to do so. However, such a theory cannot establish a basis for Rutland to recover damages in relation to State Farm's refusal to cover her car accident.

D. *The District Court Did Not Abuse Its Discretion in Excluding Jennifer Ebert's Affidavit*

"We review evidentiary rulings made by the district court for abuse of discretion and will reverse the district court's decision only in cases where substantial prejudice exists." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1259 (11th Cir. 2004) (citation omitted).

Rutland attempted to introduce Jennifer Ebert's affidavit to prove that State

11

Farm has issued retroactive coverage in other instances. Ms. Ebert's affidavit stated that she had been in an accident, was informed that her policy had been canceled for non-payment, was told to send the late payment, and State Farm provided coverage for the accident that occurred during the period when her policy was canceled.

The district court found that Ms. Ebert's affidavit lacked certain facts that made it impossible for the court to determine its probative value. First, the affidavit did not state whether it was Ms. Ebert or her bank who was at fault for the non-payment of premiums. Second, the affidavit did not state whether State Farm followed the proper notice procedures for cancellation of a policy. Thus, the district court could not determine whether Ms. Ebert's experience with State Farm was in any way relevant to the facts of Rutland's case. Moreover, Rutland failed to file Ebert's affidavit on time.

We find that the district court did not abuse its discretion in excluding the affidavit. First, the district court acted well within its discretion in determining that the affidavit lacked probative value. Second, Rutland was not substantially prejudiced by the exclusion of this affidavit—Ms. Davis still lacked the authority to promise retroactive coverage. This is true regardless of whether State Farm provided Ms. Ebert with coverage for a separate event. Further, Rutland was not

aware of Ms. Ebert's experience when she sent in her late payments; she cannot now contend that Ms. Ebert's experience led her to a reasonable belief that Ms. Davis had the apparent authority to offer retroactive coverage.

## IV.  CONCLUSION

We find that State Farm properly canceled Rutland's insurance coverage during the time period in which Rutland had her car accident; it did not waive its cancellation through acceptance of her late payment.  Second, Ms. Davis did not have the actual or apparent authority to engage in an oral binder with Rutland for retroactive coverage of the crash.  Third, Rutland has not established a plausible theory of promissory estoppel on which she can recover.  And finally, the district court did not abuse its discretion by excluding Jennifer Ebert's affidavit.  The district court properly granted State Farm's motion for summary judgment; thus, Rutland's motion for partial summary judgment was properly denied.

**AFFIRMED.**